# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE GRAY INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 13 CV 3593 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| SUSAN D. ZOSKY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM ORDER AND OPINION

In this diversity breach of contract action, Plaintiff The Gray Insurance Company contends that Defendant Susan D. Zosky has failed to perform under the parties' indemnity agreement. Defendant disputes the validity of the indemnity agreement and has asserted two counterclaims, for fraud and negligent hiring/supervision, against Plaintiff. Defendant alleges that Plaintiff allowed one of its employees to fraudulently alter financial documents crucial to the parties' transaction, and, moreover, failed to alert her to the fraud before she signed the indemnity agreement (which she avers that she would not have signed had she been aware of the fraud). Plaintiff has moved to dismiss Defendant's counterclaims [19]. For the reasons stated below, the Court grants the motion without prejudice. Defendant is given 21 days in which to replead if she believes that she can do so consistently with her obligations under Federal Rule of Civil Procedure 11.

## I. Background

The instant dispute stems from Plaintiff's issuance of several surety bonds to Defendant's husband's construction company, ZCorp. In connection with the issuance of the bonds, Defendant, her husband, and ZCorp all signed an indemnity agreement on May 30, 2011. The

indemnity agreement provides that the indemnitors, Defendant, her husband, and ZCorp, "shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against all Loss, liability, damages and expenses of whatsoever kind or nature." [1-1] ¶ 2. The indemnity agreement also provides that "[t]he Indemnitors acknowledge that any and all financial statements and other financial representations provided to the Surety act as a warranty of the Indemnitors' financial viability," and that "any misinformation provided to the Surety is a basis for denying a discharge of the Indemnitors' liability to the Surety in bankruptcy."[1] *Id.* ¶ 6. Plaintiff alleges that it has "received numerous claims on the Bonds totaling over [ ] $1.3 million and has sought reimbursement of the losses associated with those claims from Defendant." [1] ¶ 12. Plaintiff alleges that because Defendant has not acquiesced to Plaintiff's demands for payment, Defendant has breached the indemnity agreement. Plaintiff seeks both damages and specific performance.

Defendant denies that she is obligated to perform under the indemnity agreement. She "affirmatively states that because Plaintiff's agent for issuing bonds issued them fraudulently, there was a failure of consideration for any Indemnity Agreement signed by Joseph and/or Susan Zosky." [15] Ans. ¶ 9. In addition to denying many of Plaintiff's material allegations, Defendant raises two affirmative defenses: unclean hands and failure to mitigate damages.[2]

---

[1] Both of the other putative indemnitors, ZCorp and Defendant's husband, have declared bankruptcy. See Case No. 13-04549 (N.D. Ill. Bankr.) (ZCorp); Case No. 13-4550 (N.D. Ill. Bankr.) (Zosky). Plaintiff is pursuing an adversary proceeding against Defendant's husband. See 13-ap-671 (N.D. Ill. Banrk.). Defendant in her brief asserts that "because Gray insists on prosecuting this case against Susan, despite her miniscule involvement in the underlying circumstances and her extremely limited financial position, Susan has no choice but the [*sic*] incur the costs, embarrassment and disruption associated with seeking bankruptcy protection." [31] at 4. To the Court's knowledge, Defendant has not yet made good on that threat.

[2] Defendant only included her first affirmative defense in her answer. See [15]. She later filed a motion for leave to file *instanter* her second affirmative defense. See [27]. The Court set a briefing schedule on the motion, see [28], but Plaintiff responded by filing a motion to file *instanter* its answer to the affirmative defense. See [30]. To the extent that the Court may not have ruled formally on either of these

Plaintiff also asserts two counterclaims against Plaintiff: negligent hiring and supervision (Count I) and fraud and misrepresentation (Count II). Plaintiff has moved to dismiss Defendant's counterclaims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). See [19].

## II. Motion to Dismiss Counterclaims

### A. Facts

For purposes of ruling on Plaintiff's motion to dismiss Defendant's counterclaims, the Court accepts as true all well-pleaded facts asserted in Defendant's counterclaims and draws all reasonable inferences in Defendant's favor. *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001).

Plaintiff is an insurance company that has its principal place of business in Louisiana and is a citizen of Louisiana. [15] ¶ 1. Defendant is a citizen of Illinois. *Id.* ¶ 2. At all times relevant to this action, Defendant employed non-party John Davis ("Davis") as its Regional Manager of the Midwest Region. *Id.* ¶ 3.

Immediately prior to his employment with Defendant, Davis was employed by Developers Surety and Indemnity Company ("Developers") as a Regional Manager in the Midwest Region. *Id.* ¶ 6. In his capacity as Regional Manager for Developers, Davis was authorized to sign and issue surety bonds on behalf of Developers to various contractors within the Midwest Region. *Id.* While employed by Developers, Davis embarked on a scheme to defraud Developers and contractors, including Defendant's husband's company ZCorp, by issuing surety bonds without the knowledge or authorization of Developers. *Id.* ¶ 7. Davis personally retained the premiums paid by the contractors for the "bonds." *Id.* After discovering the scheme, Developers filed a civil action against Davis in Illinois state court on June 23, 2011.

---

motions, the Court clarifies here that both are granted. Defendant may assert the affirmative defense of failure to mitigate, and Plaintiff's submitted response to that affirmative defense [30] may stand.

*Id.* ¶ 11; see *id.* Ex. C. A federal grand jury indicted Davis on November 1, 2012. See *United States v. Davis*, No. 12-cr-850, Dkt. 1 (N.D. Ill.). The grand jury later issued a superseding indictment charging Davis with nine counts of federal mail, wire, and insurance fraud. See [15] ¶ 8; *id.* Ex. A. Davis pleaded guilty to the federal charges on November 11, 2013. *Id.* ¶ 8.

Defendant alleges that Plaintiff should have investigated Davis's personal and professional background before hiring him. *Id.* ¶ 9. Defendant alleges that a reasonable investigation into Davis's "business and personal background including, but not limited to, contacting his prior employer, Developers, conducting a search of any legal actions involving Davis, investigating Davis' creditworthiness, and speaking with contractors such as ZCorp about the details of Davis' dealings with them" would or should have revealed to Plaintiff that Davis was not a suitable employee. *Id.* ¶ 10. Defendant further alleges that Plaintiff "failed to properly supervise Davis' conduct following his hiring in that Davi[s] continued to engage in unlawful conduct by altering the financial statements of ZCorp without ZCorp's knowledge or consent to permit the issuance of bonds to ZCorp that would not otherwise have been issued." *Id.* ¶ 13. Absent Davis's unauthorized alteration of ZCorp's financial statements, Defendant asserts, "surety bonds would not have issued to ZCorp, and [she] would not have executed any indemnity agreement for bonds issued by [Plaintiff]." *Id.* ¶ 17. Defendant claims that, as a proximate result of Plaintiff's negligence in hiring and/or supervising Davis, she signed an indemnity agreement that she otherwise would not have. See *id.* ¶ 22. Because of Plaintiff's negligence, Defendant asserts, Davis was able to "intentionally fabricate[] and submit[] to [Plaintiff] a false financial statement for ZCorp for the purpose and intent of causing bonds to be issued to ZCorp which Davis and [Plaintiff] knew should never have been issued to ZCorp." *Id.* ¶ 22. She asserts that "[a]s a proximate result of [Plaintiff's] negligence," she "has suffered compensatory damages

4

including the legal fees and costs incurred to respond to [Defendant's] wrongful demand and subsequent suit on the indemnity agreement." *Id.* ¶ 23.

Defendant also advances a claim of fraud and misrepresentation (Count II). See *id.* ¶¶ 24-33. She alleges that Plaintiff and Davis submitted the indemnity agreement to her and her husband for execution without disclosing material facts relating to Davis's misconduct at Developers or his alteration of ZCorp's financial statements. *Id.* ¶ 25. According to Defendant, "Davis knew, and [Plaintiff] knew or should have known, that ZCorp's actual financial condition was such that it was not qualified to procure bonds from [Plaintiff]." *Id.* ¶ 27. Yet Davis and Plaintiff allegedly "withheld the material information regarding Davis' fraudulent conduct while employed by Developers and [Plaintiff] for the purpose and with the intent of inducing [Defendant] to execute the Indemnity Agreement." *Id.* ¶ 29. Defendant alleges that she relied on Davis's and Plaintiff's omissions and misrepresentations, *id.* ¶ 30, and would not have signed the indemnity agreement if Davis and Plaintiff "had disclosed the truth regarding Davis' fraudulent conduct while employed by Developers and [Plaintiff] as well as Davis' fraudulent conduct in altering ZCorp's financial statements." *Id.* ¶ 31. Defendant contends that, "[a]s a proximate result of Davis' and [Plaintiff's] fraudulent acts and omissions, [she] has suffered compensatory damages including the legal fees and costs incurred to respond to [Plaintiff's] wrongful demand and subsequent suit on the indemnity agreement." *Id.* ¶ 32. She further avers that she is "entitled to recover exemplary damages" because the alleged "acts and omissions" were "willful and wanton and made in reckless disregard" of her rights. *Id.* ¶ 33.

Plaintiff has moved to dismiss Defendant's counterclaims pursuant to Federal Rules of Civil Procedure 12(b)(6). Plaintiff also contends that Count II lacks the particularity required by Federal Rule of Civil Procedure 9(b).

**B.    Legal Standard**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Defendant's counterclaim and draws all reasonable inferences in her favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the counterclaim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that Plaintiff is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the counterclaim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the counterclaim are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the [plaintiff] fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the counterclaim and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

Where a claim sounds in fraud, the allegations of fraud must satisfy the heightened

pleading requirements of Rule 9(b). Fed. R. Civ. P. 9(b); see also *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (citing *Rombach v. Chang*, 355 F.3d 164, 170-71 (2d Cir. 2004)). Rule 9(b) states that for "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino*, 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Rule 9(b), read in conjunction with Rule 8, requires that Defendant plead "the time, place and contents" of the purported fraud. *Fujisawa Pharm. Co., Ltd. v. Kapoor*, 814 F.Supp. 720 (N.D. Ill. 1993). "The purpose of this heightened pleading requirement is to 'force the [Defendant] to do more than the usual investigation before filing his [counterclaim].'" *Amakua Dev. LLC v. Warner*, 411 F.Supp.2d 941, 953 (N.D. Ill. 2006) (citations and internal quotation marks omitted).

  C. **Analysis**

    1. **Fraud & Misrepresentation**

The Court first addresses Defendant's claim of "fraud and misrepresentation." Although it appears from the counterclaims that Defendant is seeking to hold Plaintiff liable for failing to disclose Davis's checkered past and his alteration of ZCorp's financial statements, see [15] ¶¶ 25-33, Defendant's brief suggests that she seeks to proceed on the theory that Plaintiff should be vicariously liable for Davis's alleged fraud. See [31] at 4 ("When an agent who is authorized to a make a contract on his principal's behalf uses fraud to induce the contract, the principal is liable even if the agent is acting solely to feather his own nest. In such a case the principal's liability is derivative from the agent's fraud, and there is no need to allege a fraudulent representation by the principal." (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 471

7

(7th Cir. 1999)). Either way, Defendant's allegations of the alleged fraud (or fraudulent concealment) are too vague to clear the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b), which applies to both fraudulent misrepresentation and fraudulent concealment claims. See *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569, 571 (7th Cir. 2012).

To state a claim for fraudulent misrepresentation, a party must allege "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance." *Id.* at 569 (quoting *Dloogatch v. Brincat*, 920 N.E.2d 1161, 1166 (Ill. App. Ct. 1st Dist. 2009)). To state a claim for fraudulent concealment, "in addition to meeting the elements of fraudulent misrepresentation, a plaintiff must allege that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose to the plaintiff." *Id.* at 571.

A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how: the first paragraph of a newspaper story." *Borsellino*, 477 F.3d at 507 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)). Even read charitably, Defendant's allegations suggest only that Davis made some unspecified alteration(s) to ZCorp's financial statements, that Plaintiff failed to apprise her of the alteration(s) before presenting her with the indemnity agreement, and that she relied on these omissions to her detriment. It is unclear what any alteration entailed, how it was made, when it was made, or what duty Plaintiff had to disclose it to Defendant. *Cf. N. Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1102 (Ill. App. Ct. 1st Dist. 1995) ("The lender also has no duty to refrain from making a loan if the lender knows or should know that the borrower cannot repay the loan."). (It is equally unclear to the Court,

8

though not necessarily relevant to Plaintiff's Rule 9(b) motion, why Defendant affirmatively sought and accepted surety bonds that ZCorp never was qualified to receive. See [15] ¶ 20.) In other words, only the "who" and "what" have been pleaded at this time.

Defendant's contention that she need only generally plead Plaintiff's knowledge, while correct, see Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."), is misplaced. Plaintiff has not challenged the adequacy of her allegations as to its knowledge; it has challenged the lack of detail regarding "who at Gray made allegedly false representations to her, when such representations were made, where such representations were made (i.e., in person, by telephone, by email, etc.), or how such representations were made (i.e., verbally, in writing, or both; under what circumstances)." [20] at 8. The Court is "sensitive to the information asymmetries that may prevent a plaintiff from offering more detail" concerning alleged fraud at the pleading stage, *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011)), but given that Defendant is alleging that changes were made to documents generated by her husband's business, it strains credulity that she cannot provide more detail than the counterclaims currently contain.

Plaintiff's motion to dismiss Defendant's fraud/misrepresentation counterclaim pursuant to Rule 9(b) is granted without prejudice. Defendant is given 21 days in which to correct the identified infirmities, if she believes that she can do so consistently with her obligations under Federal Rule of Civil Procedure 11.

### 2. Negligent Hiring & Supervision

As with her fraud claims, Defendant asserts two distinct causes of action in omnibus fashion in Count I: negligent hiring and negligent supervision. See *Vancura v. Katris*, 939

N.E.2d 328, 342 (Ill. 2010). To state any claim of negligence, Defendant must plead the existence of a duty, a breach of the duty, and an injury to her proximately caused by the breach. *Id.* In the specific context of negligent hiring, Defendant can satisfy her pleading obligation by alleging "(1) that the employer knew or should have known that the employee had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of the employee's hiring or retention; and (3) that this particular unfitness proximately caused [her] injury." *Van Horne v. Muller*, 705 N.E.2d 898, 904 (Ill. 1998). A plaintiff (or here, Defendant counterclaimant) pursuing a theory of negligent hiring must allege both a particular unfitness and a particular danger of harm. See *id.* at 905-06. In other words, "[t]he particular unfitness of the employee must have rendered the plaintiff's injury foreseeable to a person of ordinary prudence in the employer's position." *Id.* at 906. The Illinois Supreme Court has not expressly specified how the standard elements of a negligence claim map onto a claim of negligent supervision, see *Vancura*, 939 N.E.2d at 343, though the Illinois Appellate Court has interpreted *Vancura* to require allegations that "(1) the defendant had a duty to supervise; (2) the defendant negligently supervised the employee, thereby breaching its duty; and (3) such negligence proximately caused the plaintiff's injuries." *Boatright v. Neagu*, 2012 WL 6950312, at *6 (Ill. App. Ct. 1st Dist. May 2, 2012); see also *Willyard v. Wal-Mart Stores, Inc.*, 2010 WL 487080, at *4 (S.D. Ill. Feb. 8, 2010) (same).

Plaintiff contends that Defendant's negligence counterclaim is barred by the economic loss doctrine. See [20] at 3-5. The Court agrees.

The economic loss doctrine, also known as the *Moorman* doctrine in Illinois, bars recovery in tort for purely economic losses arising out of a failure to perform contractual

obligations. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 567 (7th Cir. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 448-49 (1982)). "The *Moorman* doctrine precludes liability for negligent hiring and supervision where, in the course of performing a contract between the defendant and the plaintiff, the defendant's employees negligently cause the plaintiff to suffer some purely economic form of harm." *Id.* In the words of the Illinois Supreme Court, "[a] plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." *Anderson Elec., Inc. v. Ledbetter Erection Corp.*, 503 N.E.2d 246, 249 (Ill. 1986). The Illinois Supreme Court articulated three exceptions to the economic loss doctrine in *Moorman*, none of which is applicable to Defendant's claim of negligent hiring and supervision: (1) where the plaintiff sustained personal injury or property damage resulting from a tortious event, such as a sudden or dangerous occurrence; (2) where the plaintiff's damages were proximately caused by the defendant's intentional, false representation; and (3) where the plaintiff's damages were proximately caused by the negligent misrepresentation of a defendant in the business of supplying information for the guidance of others in their business transactions. See *Moorman*, 435 N.E.2d at 450-52; see also *In re Chi. Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997) (same). These exceptions are "rooted in the general rule that '[w]here a duty arises outside of contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty.'" *Wigod*, 673 F.3d at 567 (quoting *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994)). Thus, the "key question" in determining whether the economic loss doctrine applies is "whether the defendant's duty arose by operation of contract or existed independent of the contract." *Id.*

To the extent that Plaintiff had any duty to Defendant, it arose in connection with the

11

parties' contractual negotiations and ultimate contractual relationship. Defendant asserts in her brief, but not her counterclaim, that her negligence claim "is based on [Plaintiff's] duty as an employer to exercise due care in the hiring and supervision of Davis as its Regional Manager," a duty that she asserts "is unrelated to, and arises outside of, the Indemnity Agreement." [31] at 4-5. She does not offer any support for this assertion. See *id.* The Seventh Circuit stated in *Wigod* that an employer alleged to have negligently hired and supervised its employees "owed [plaintiff] no independent duty to employ qualified people and to supervise them appropriately in servicing her home loan." *Wigod*, 673 F.3d at 568. Defendant has not in her pleading or her brief suggested that any such independent duty existed between her and Plaintiff. This case is factually analogous to *Soranno v. New York Life Insurance Co.*, 1999 WL 104403, at *16 (N.D. Ill. Feb. 24, 1999), which the Seventh Circuit cited approvingly in *Wigod*. There, the plaintiffs alleged that an insurance agent misled them in connection with the sale of certain insurance contracts and annuities. The court concluded that plaintiffs' claims of negligent supervision were barred by the *Moorman* doctrine because the rogue agent's acts "appear to have arisen under the contract." *Soranno*, 1999 WL 104403, at *16. The same is true here: Davis allegedly committed malfeasance in connection with Defendant's procurement of a contract with Plaintiff. The parties' relationship is founded solely upon the allegedly improper contract and, accordingly, Defendant is precluded from seeking relief for her purely economic losses in tort. Plaintiff's motion to dismiss her negligence claims is granted. The dismissal is without prejudice. If Defendant believes that she can identify a duty that Plaintiff owed her independent of the contract, or otherwise believes that she can plead around *Moorman* consistently with her obligations under Federal Rule of Civil Procedure 11, she may replead within 21 days of the date of this order.

### III. Conclusion

For the reasons stated above, Plaintiff's motion to dismiss Defendant's counterclaims [19] is granted without prejudice. Defendant is given 21 days in which to replead if she believes that she can do so consistently with her obligations under Federal Rule of Civil Procedure 11.

Dated: August 6, 2014

_____
Robert M. Dow, Jr.
United States District Judge